IN THE UNITED STATES COURT FOR THE DISTRICT OF UTAH

CENTRAL DIVISION

| | |
|---|---|
| DOUGLAS STEWART CARTER,<br><br>Petitioner,<br><br><br><br><br><br>vs.<br><br>CLINT FRIEL, Warden,<br><br>Respondent. | MEMORANDUM DECISION AND ORDER DENYING MOTION TO DISMISS ON GROUNDS OF TIME BAR AND SCHEDULING *RHINES* BRIEFING<br><br><br><br>Case No. 2:02-CV-326 TS |

This matter is before the court on Respondent's Motion to Dismiss the Petition for Writ of Habeas Corpus.

## I.  SUMMARY

Petitioner Douglas Stewart Carter was sentenced to death by a jury in the Utah state court following his conviction for capital murder.  Petitioner seeks habeas relief on the grounds that his sentence was the result of violations of his federal constitutional rights. Respondent moves to dismiss on several grounds including time bar and failure to exhaust all claims.  The court finds that the Petition is not time barred, but finds that because some of the claims were not exhausted in the courts of the State of Utah, this is a mixed petition

1

that must be either dismissed or stayed.  Accordingly, the court will allow supplemental briefs in which Petitioner may either (1) state he prefers to dismiss his unexhausted claims in any amended petition, or (2) brief the factors recently announced in *Rhines v. Weber*, 125 S. Ct. 1528 (2005), for determining if his mixed petition should be dismissed or stayed.

## II. BACKGROUND

In 1985, Petitioner Douglas Carter was convicted in Utah state court of murder in the first degree and sentenced to death.  He appealed.  In 1989, the Utah Supreme Court affirmed his murder conviction but reversed his death sentence and remanded for re-sentencing.  *State v. Carter*, 776 P.2d 886 (Utah 1989) (*Carter I*).   In January 1992, following a new penalty phase hearing, a jury again sentenced him to death.  He appealed and the death sentence was affirmed.   *State v. Carter*, 888 P.2d 629 (Utah 1995) (*Carter II*), *cert. denied, Carter v. Utah*, 516 U.S. 858 (1995).  He then filed a *pro se* application for a writ of habeas corpus seeking post-conviction relief in the state court.  Eventually, counsel was appointed to pursue the state habeas proceeding.  The history of Petitioner's obtaining of counsel in his state habeas proceeding is set forth in this court's June 10, 2003 Order Denying Respondent's Motion Re: Compliance with AEDPA "Opt-in" Provisions (Opt-in Order).  The Utah Supreme Court upheld the denial of the state habeas/post-conviction relief claims.  *Carter v. Galetka,* 44 P.3d 626 (Utah 2001) *(Carter III)*.  This case was opened on April 22, 2002, when Petitioner filed a Motion to proceed in forma pauperis, and for appointment of counsel.   Following extensive procedural preliminaries, and a stay of the limitations period, Petitioner filed the present federal habeas Petition under 28 U.S.C. § 2254, on March 25, 2004.  Respondent then filed the present Motion to Dismiss.

III.  PROCEDURAL ISSUES

Respondent moves to dismiss the Petition on various grounds including time bar, failure to state any claim upon which the court may grant relief under AEDPA;[1] failure to state federal claims; failure to exhaust all claims; and procedural bar.  In support of his position, Respondent has filed Addenda consisting of transcripts and orders from this case as well as the memoranda and opinions from the state court direct appeals and the state court habeas proceedings.

Petitioner contends that his Petition is not time-barred; that he has exhausted his claims in the Utah state courts, and, if he has not exhausted his claims, exhaustion should be excused or he should be allowed to withdraw his unexhausted claims rather than dismissing his mixed Petition entirely; that his Petition complies with AEDPA because it complies with the Rules Governing Section 2254 Cases (Section 2254 Rules) by setting forth a brief statement of the facts supporting his Petition; that if he has not complied with the pleading requirements of AEDPA he should be granted leave to amend his Petition, that all of his claims are federal claims; and that his claims are not procedurally barred.

The court will first address the timeliness issue, because if the Petition was not timely filed, it would be dismissed without further proceedings.  Next, the court will address whether all claims have been exhausted.  Because the court finds, below, that this is a mixed petition containing unexhausted claims, the court is unable to proceed to the merits of the parties' remaining arguments.

---

[1]Antiterrorism and Effective Death Penalty Act of 1996.

In addition to arguing that the court should afford him the opportunity to voluntarily dismiss any claims found to be unexhausted, Petitioner noted in his Response that the *Rhines* case was then pending before the United States Supreme Court.  By the time Respondent filed the reply memorandum, the Supreme Court had issued its opinion in *Rhines v. Weber*, 125 S.Ct. 1528 (2005), addressing the appropriate handling of mixed petitions.  Respondent's Reply noted that the Supreme Court's *Rhines* opinion was issued after Petitioner had filed his Response and stated that the state had no objection to Petitioner filing a supplemental response on the issue of the newly announced *Rhines* factors.  However, Petitioner has not, as the court would have expected, accepted the State's invitation to file a supplemental response to this important issue.  As a result, it is not possible for the court to now consider all of the *Rhines* factors for any of the claims that are unexhausted.  However, the court is able to address the exhaustion issue that is fully briefed, namely whether certain claims are exhausted, and will set the remaining *Rhines* issues for briefing on an expedited basis.

Pursuant to *Moore v. Schoeman*, 288 F.3d 1231, 1235 (10th Cir. 2002), when a federal court is presented with a mixed petition, a federal court may address individual claims on their merits only if the result allows the court to dismiss the entire petition on its merits.  *Moore* construes subsection (b) of 28 U.S.C. § 2254:

> (b)(1) *An application* for a writ of habeas corpus on behalf of a person in custody of the State court shall not be granted unless it appears that–
>
> (A)   The applicant has exhausted the remedies available in the courts of the State; . . .

* * *

(2)     *An application* for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State.

28 U.S.C. § 2254(b)(emphasis added).

The *Moore* court considered the exception contained in subsection (b)(2) of § 2254 and noted that the statute differentiates treatment between individual claims and an application for a petition of habeas corpus.  Accordingly, the court held that the exception to the prohibition against federal courts considering petitions containing unexhausted claims applies only to situations where the entire application for a petition of habeas corpus could be denied on its merits.  *Id.*  ("individual, unexhausted claims may be denied, but only if the result allows the court to determine the entire petition on the merits").  The rationale of the rule announced in *Moore* applies equally to individual exhausted claims contained in a mixed petition.

In the present case, for the reasons stated below, it has not been established that the entire Petition should be dismissed as untimely.  Therefore, the subsection (b)(2) exception does not apply and the court may not consider any claims on their merits until Petitioner has had an opportunity to either dismiss his unexhausted claims or to request stay and abeyance for the purpose of returning to state court to exhaust those claims.

Respondent filed a Motion to Stay Time to Answer Petition for Writ of Habeas Corpus (Motion to Stay Time) until after the present Motion to Dismiss is resolved.  As noted in Respondent's Motion to Stay Time, the Motion to Dismiss contains much of the information that would have been required in an Answer.  See Rule 5(b), (c), and (d), Rules

5

for Section 2254 Cases.  Petitioner does not oppose the Motion to Stay Time and it will be granted.

IV.  PETITION IS TIMELY FILED

A.  <u>Introduction</u>

Respondent contends that the Petition is not timely filed because the one-year limitations period under 28 U.S.C. 2244(d)(1) was not tolled by this court's July 17, 2003 Order *Nunc Pro Tunc* Tolling of Statute of Limitations (*Nunc Pro Tunc* Order).  Petitioner contends that the court properly tolled the one-year limitations period *nunc pro tunc* and his Petition is therefore timely.   If not, Petitioner contends the limitations period was equitably tolled.  Because this issue is potentially dispositive of the entire Petition, 28 U.S.C. § 2254(b)(2), the court will address it first.

B.  <u>Background and Prior Orders</u>

The procedural and factual background of this issue was previously set forth in the *Nunc Pro Tunc* Order and the January 30, 2004 Order Granting Respondent's Motion to Amend *Nunc Pro Tunc* Order on Tolling of Statute of Limitations and Certification Pursuant to 28 U.S.C. § 1292(b) (Certification Order).

The *Nunc Pro Tunc* Order noted the Court had understood that the statute of limitations was tolled by the Magistrate Judge's May 30, 2002 Order as follows:

On May 30, 2002, the [magistrate judge] ordered, among other things, that:

> The limitations period imposed by 28 U.S.C. § 2263 will be tolled until this Court enters its order determining whether Utah has satisfied the "opt-in" requirements.

6

The issue of the opt-in requirements was complex and raised a novel issue of law in this jurisdiction. The untimely death of the Magistrate Judge originally handling the issue delayed the proceedings.  The opt-in issue was intertwined with other issues raised by the parties including the adequacy of funding and disclosure information filed in connection with the arguments regarding funding.  Because the opt-in issue determined the ultimate standard of review, *ex parte* motions filed by Petitioner were reserved until the opt-in issue was decided.  It was the intent of the court that all applicable statutes of limitations be tolled pending the determination of the opt-in issue.

*Nunc Pro Tunc* Order at 1-2.

The issues were further set forth in the Clarification Order:

On April 22, 2002, Petitioner, Douglas Stewart Carter, filed an Application for Appointment of Counsel to Assist in the Investigation and Preparation of a Petition for Writ of Habeas Corpus.  Petitioner sought the assistance for the preparation of his habeas petition for a person under a state sentence of death.   On April 23, 2002, the matter was referred to Magistrate Judge Ronald Boyce.

On May 9, 2002, Respondent gave notice of the State's position that Utah had satisfied the prerequisites for Utah to receive the "opt in" benefits provided as part of the reforms enacted by the Antiterrorism and Effective Death Penalty Act (AEDPA).  If Respondent qualified for the opt-in provisions, it was entitled to the streamlined procedural provisions of AEDPA, 28 U.S.C. § 2261 through 2266, including the 180-day statute of limitations provided in 28 U.S.C. § 2263(a).  If the opt-in provisions are not applicable, the one-year statute of limitations found at 28 U.S.C. § 2244(d)(1) applies.

On May 30, 2002, Magistrate Judge Boyce ordered that the "limitations period imposed by 28 U.S.C. § 2263 will be tolled until this Court enters its order determining whether Utah has satisfied the 'opt-in' requirements."

During the briefing period, this Court withdrew the reference from Magistrate Judge Boyce due to his severe illness.  Magistrate Judge Boyce subsequently died.  A lengthy briefing period followed, with the last brief filed on February 26, 2003.  On June 10, 2003, this Court entered its order finding that Utah had not satisfied the opt-in prerequisites and denying the State's Motion.

Sometime shortly before July 17, 2003, the Court was contacted by Petitioner's counsel representing that the State believed that the one-year statute of limitations had not been tolled and that an execution could be imminent.  The Court immediately set a status conference.  At the status conference, Respondent's counsel represented that it had not undertaken to seek a death warrant and the Court accepted that representation.  The Court announced that it had entered a *nunc pro tunc* Order regarding the one-year statute of limitations.  For the reasons stated in that July 17, 2003, *Nunc Pro Tunc* Order on Tolling of Statute of Limitations (*Nunc Pro Tunc* Order), the Court ordered that the one-year statute of limitations period imposed by 28 U.S.C. § 2244(d)(1) was also tolled.  This order was in accordance with this Court's understanding of the procedural posture of the case when the reference was withdrawn from the Magistrate Judge due to his illness and untimely death.  Prior to the entry of the June 10, 2003 Order, the parties had not informed this Court that there was an issue on whether or not the separate limitations period was running as a result of proceedings before the then-deceased Magistrate Judge.

At the July 17, 2003, hearing, Respondent's counsel requested that the Court vacate the *Nunc Pro Tunc* Order and the Court denied the motion because, as stated in the *Nunc Pro Tunc* Order, the Court had proceeded with the opt-in question on the understanding and intent that all applicable statutes of limitations were tolled.  <u>The Court also informed counsel that if Respondent sought reconsideration, it should do so under the applicable Rule of Civil Procedure</u>.

On July 30, 2003, Respondent filed the present Motion to Amend the *Nunc Pro Tunc* Order.  Respondent contends that proceedings before the Magistrate Judge evidenced that Judge's intent that only the § 2263 180-day limitations period be tolled.  Respondent asserts that, pursuant to the transcripts of those proceedings, Petitioner had requested that the one-year limitations period be tolled and the Magistrate's response "although not entirely clear, amounts to a refusal." Rep. Br. at 8.

<u>Respondent does not request that the order be reconsidered on the merits</u>.  Instead, Respondent requests that the *Nunc Pro Tunc* Order be amended to include language certifying it for an immediate appeal pursuant to 28 U.S.C. § 1292(b).  Petitioner opposes the request and contends that the present Motion is merely an untimely appeal of the June 10, 2003 Order.

Certification Order at 1-4 (emphasis added).

C.   <u>Analysis</u>

Having declined to accept this court's invitation to file a written motion regarding the *Nunc Pro Tunc* Order, Respondent raises the following issues: (1) this court did not have jurisdiction to rule on the time bar issue because the issue was not ripe; and (2) the court failed to provide Respondent with an opportunity for notice and a hearing prior to entering the *Nunc Pro Tunc* Order.

Petitioner contends that the *Nunc Pro Tunc* Order was a proper exercise of its inherent authority to manage and control its docket, that the statute of limitations issue was ripe for adjudication and, in the alternative, that it was a legitimate invocation of the doctrine of equitable tolling because, among other reasons, the funding of experts and investigations necessary for the preparation of the Petition were stayed pending resolution of the opt-in request.

In its prior orders, the court has already set forth its position on the tolling issue. However, it is important to note that Respondent agreed to the initial tolling order and did nothing, after the withdrawal of the reference to the magistrate judge, to clarify for this court that Respondent's position was distinguishing between the two limitations periods for tolling purposes.

Respondent contends that the parties agreed, and Magistrate Judge Boyce ordered, that only the six-month limitations period, and not the one-year limitations period, be tolled. However, as the course of this case reveals, this court understood the applicable one-year statute of limitations was tolled.  For example, when dealing with one of the many preliminary issues that required resolution in this case, Respondent requested a stay of a

9

briefing schedule until he could obtain disclosure of certain information filed by Petitioner under seal.  However, in requesting that stay, Respondent did not inform the court that he was seeking a stay of briefing at a time when his position was that eight months of a twelve month limitations period had already expired.  *See* Respondent's Motion for Disclosure of Withheld Information and Motion to Stay Briefing Schedule (requesting disclosure of sealed affidavits on issue of adequacy of funding).  At the November 12, 2002 hearing on said Motion, the court expressed its concern that a formal order appointing counsel would trigger the statute of limitations.  There was a brief discussion on the tolling of the 180-day period.  However, counsel did not take the opportunity to clarify that Respondent's position was that only one of the two possible statute of limitations was tolled.

Similarly, on February 13, 2003, at the time the parties submitted a stipulation to extend time for filing Petitioner's Opposition Memorandum, the parties did not inform the court that their position was that the one-year statute of limitations would expire in one month.

Respondent contends that the State is unable to comment on the position that various funding requests relating to preparing a petition were stayed until after the opt-in issue was decided because those requests were made *ex parte*.  *See Nunc Pro Tunc* Order at 1-2 (noting that funding issues were reserved until after the Opt-in Order determined standard of review).

The court considered the requests *ex parte,* pursuant to its finding at the March 8, 2002 hearing on Petitioner's *Ex Parte* Motion, *Ex Parte* Request, and sealed matter, that Petitioner's counsel made a "proper showing . . . concerning the need for confidentiality"

as required by 21 U.S.C. § 848(q)(9), and therefore, those matters were properly *ex parte*. Consistent with its understanding and intent regarding tolling, the court deferred those various *ex parte* matters until after the opt-in issue was resolved.

In entering the *Nunc Pro Tunc* Order, it was the court's intention to immediately clarify its understanding and intent on the tolling issue.   The court afforded Respondent the opportunity to seek relief from the Order by filing an appropriate written motion.  Rather than seeking by written motion to vacate or to reconsider the *Nunc Pro Tunc* Order, Respondent sought certification of the issue for immediate appeal.  By the Certification Order, the court granted Respondent's request for certification for appeal.

On March 31, 2004, the Tenth Circuit denied Respondent's petition for a writ of mandamus and for permission to appeal for the purpose of challenging the *Nunc Pro Tunc* Order.  The denial was based on the finding that Respondent is free to seek appellate review of the tolling issue after a final order is entered in this case.

D.    Findings

Upon consideration of the entire record in this case, the court finds that it did have jurisdiction to enter the *Nunc Pro Tunc* Order.  The court further finds that the *Nunc Pro Tunc* Order reflects the court's intent and understanding regarding the statute of limitations.

In the alternative, the court finds that this is an appropriate case for equitable tolling. The United States Supreme Court recently assumed, without deciding, that equitable tolling applied to AEDPA's statute of limitations.  *Pace v. DiGuglielmo*, 125 S.Ct. 1807, 1815 and n. 8 (2005).  In so doing, the Court applied a general rule that "a litigant seeking equitable tolling bears the burden of establishing two elements: (1) that he has been pursuing his

11

rights diligently, and (2) that some extraordinary circumstance stood in his way." *Id.* at 1814. *Accord, Gibson v. Klinger*, 232 F.3d 799, 808 (10th Cir. 2000) (one-year statute of limitations is subject to equitable tolling only in "rare and exceptional circumstances").

Respondent contends that Petitioner did not diligently preserve his rights because he knew that the one-year limitations period was running and took no action to obtain a stay of that period.  However, that belies the course of conduct of the parties and the court during the course of this case.   It is unfortunate that the confusion arose as a result of the existence of a tolling order already in place when the case referral was withdrawn due to the magistrate judge's final illness.  However, the court having been informed that there was a stay and the parties were relying on it, reserved ruling on various related issues and proceeded to determine the opt-in issue.  Respondent did not inform this court the situation was otherwise until after the Opt-in Order was entered, several months after Respondent argues the one-year statute of limitations had already passed.  The court's *Nunc Pro Tunc* Order did not deprive Respondent of the ability to raise the limitations defense as evidenced by the fact that Respondent is asserting the defense exactly when he argues it is appropriate--in the present Motion to Dismiss the Petition.

The "rare and exceptional" circumstances of this case include the unusual confluence of the following: the necessity of first resolving the issue of first impression raised by Respondent,[2] the fact-intensive nature of that issue, the parties' agreement to toll one limitations period, the change of judges, the parties' failure to alert the new judge

_____

[2]The adequacy of Utah's standards for the competency of post-conviction counsel.

12

to the distinction between how the parties' were treating the two limitations periods, the fact that the issue of first impression involved information filed under seal (resulting in the Motion to Stay Briefing on the opt-in issue), and the issues involved in the *ex parte* requests for funding. Throughout this period, Petitioner's counsel diligently pursued Petitioner's federal claims in this court by briefing the opt-in issue and seeking funding for matters counsel deemed necessary for the preparation of the Petition. Throughout this period, the status of this case was that many issues were stayed pending resolution of the opt-in issue raised by Respondent. Accordingly, the court finds that if the one-year statute of limitations was not stayed, it was equitably tolled.

     E.    <u>Certification Request</u>

In the event that Respondent does not prevail on the limitations issue, Respondent seeks a second certification of the issue of the statute of limitations for an immediate appeal. The court agrees with Respondent that it would save the parties significant time and resources to have a ruling on the dispositive issue of the statute of limitations as early as possible. In fact, this is why the court agreed to certify the issue in its Clarification Order. However, the Tenth Circuit having stated the need for that court to address the issue in a final order on this habeas Petition, it does not appear that further attempts to certify the issue prior to such final order would be useful. Therefore, the court will not issue a second certification of the limitations issue for immediate appeal at this stage of the proceedings.

IV.  MIXED PETITION UNDER *RHINES*

As noted above, pursuant to § 2254(b)(1), a federal court may not reach the merits of a petition containing a claim that was not exhausted in state court.  *Rhines,* 125 S.Ct. at 1533.   A petition that contains claims that are both exhausted and unexhausted is a mixed petition.  In *Rose v. Lundy*, 455 U.S. 509 (1982), the Supreme Court held that a federal district court "may not adjudicate mixed petitions for habeas corpus, that is, petitions containing both exhausted and unexhausted claims."  *Id*. at 510.  Applying *Lundy's* strict "total exhaustion" requirement, such mixed petitions were dismissed without prejudice.  *Id.*

However, when AEDPA was enacted, it imposed a strict time statute of limitations under which dismissing a mixed petition might jeopardize the timeliness of a subsequent petition.  *Rhines*, 125 S.Ct. at 1533.  In such a case, the federal district court has discretion to stay a mixed habeas petition and "hold it in abeyance while the petitioner returns to state court to exhaust his previously unexhausted claims.  Once the petitioner exhausts his state remedies, the district court will lift the stay and allow the petitioner to proceed in federal court."  *Rhines*, 125 S.Ct. at 1534.  The Court in *Rhines* strictly limited the availability of such a stay and abeyance procedure as follows:

> [S]tay and abeyance should be available only in limited circumstances. Because granting a stay effectively excuses a petitioner's failure to present his claims first to the state courts, stay and abeyance is only appropriate when the district court determines there was good cause for the petitioner's failure to exhaust his claims first in state court.  Moreover, even if a petitioner had good cause for that failure, the district court would abuse its discretion if it were to grant him a stay when his unexhausted claims are plainly meritless. *Cf.* 28 U.S.C. § 2254(b)(2) ("An application for a writ of habeas

14

corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State").

Even where stay and abeyance is appropriate, the district court's discretion in structuring the stay is limited by the timeliness concerns reflected in AEDPA. A mixed petition should not be stayed indefinitely.

\* \* \*

Thus, district courts should place reasonable time limits on a petitioner's trip to state court and back. *See, e.g., Zarvela*, 254 F.3d, at 381 ("[District courts] should explicitly condition the stay on the prisoner's pursuing state court remedies within a brief interval, normally 30 days, after the stay is entered and returning to federal court within a similarly brief interval, normally 30 days after state court exhaustion is completed"). And if a petitioner engages in abusive litigation tactics or intentional delay, the district court should not grant him a stay at all. *See id.*, at 380-381.

On the other hand, it likely would be an abuse of discretion for a district court to deny a stay and to dismiss a mixed petition if the petitioner had good cause for his failure to exhaust, his unexhausted claims are potentially meritorious, <u>and</u> there is no indication that the petitioner engaged in intentionally dilatory litigation tactics. In such circumstances, the district court should stay, rather than dismiss, the mixed petition. In such a case, the petitioner's interest in obtaining federal review of his claims outweighs the competing interests in finality and speedy resolution of federal petitions. For the same reason, if a petitioner presents a district court with a mixed petition and the court determines that stay and abeyance is inappropriate, the court should allow the petitioner to delete the unexhausted claims and to proceed with the exhausted claims if dismissal of the entire petition would unreasonably impair the petitioner's right to obtain federal relief. See *id.*, at 520 (plurality opinion) ("[A petitioner] can always amend the petition to delete the unexhausted claims, rather than returning to state court to exhaust all of his claims").

*Rhines,* 125 S.Ct. at 1535 (citations partially omitted and emphasis added).

Because Petitioner admits that some of his claims are not exhausted, this is clearly a mixed petition. Accordingly, this court must analyze each unexhausted claim to determine whether Petitioner had good cause for failing to exhaust the claim and whether

15

it is potentially meritorious.  Moreover, the court must consider whether Petitioner has engaged in "abusive litigation tactics or intentional delay."  Because the *Rhines* factors are stated in the conjunctive, it appears that all three factors (good cause for failing to exhaust, meritorious claim, and lack of intentionally dilatory litigation tactics) must be present for the court to exercise its discretion to stay rather than dismiss this Petition.

Because of the timing of the *Rhines* decision and the fact that Petitioner has not taken advantage of Respondent's lack of objection to Petitioner filing a supplemental brief on the issue, it is not possible for the court to make a full determination of all of the *Rhines* factors for each unexhausted claim at this time.  However, it is possible on the current record to determine whether claims were exhausted as claimed by Petitioner.

The court will allow Petitioner to file notice of whether he seeks to amend his Petition to delete any unexhausted claims rather than having his mixed petition dismissed or seeking stay and abeyance.  To the extent he seeks stay and abeyance, Petitioner shall file a supplemental brief addressing the *Rhines* factors separately for each of the claims the court finds, below, are not exhausted.  As to each such claim, Petitioner should submit his position on whether he had good cause for his failure to exhaust such claim, whether the claim is potentially meritorious and, to the extent applicable, the "intentionally dilatory litigation tactics" factor discussed in *Rhines*.  On the meritorious prong, Petitioner shall address whether the claim could be pursued by a presently available state remedy.  *See Moore*, 288 F.3d at 1233 n.3 (explaining "anticipatory procedural bar.").  Respondent will be afforded an opportunity to respond and a reply will be allowed at Petitioner's option.

## VI.  EXHAUSTED AND UNEXHAUSTED CLAIMS

### A.    Claims Petitioner Concedes Are Unexhausted

Petitioner concedes he has not exhausted the following claims: Claims I (A)(6) (failure to secure witness), I (A)(10), I (A)(11), I (A)(13), VI  (interpreter's qualifications and manner in which questions posed to L. Tovar), VIII (A)(7) (ineffective assistance of counsel during 1992 retrial of penalty phase for failure to read favorable portion of E. Tovar's testimony into record), VIII (A)(8), VIII (A)(11), VIII (A)(18), IX (A)(2), XVI (A)(1)(g), XVII (A)(5) and XXXVIII (A)(3) (improper argument of prosecutor and inadequate arguments of defense counsel).

### B.    Claims Respondent Concedes May Be Exhausted

Respondent concedes that three of Petitioner's claims may be exhausted.  Upon review, the court finds those three claims are exhausted.  Those claims are: Claim 1 (A)(7) (alleging that the 1995 trial counsel was ineffective in connection with change of venue motion); Claim VIII (A)(15) (alleging that the 1992 penalty phase counsel was ineffective for failing to exercise a peremptory challenge to remove juror Nelson); and Claim I (A)(5)(g) (alleging ineffective assistance of 1995 trial counsel for not conducting independent investigation or reviewing discovery relating to a blond or non-Negroid hair found on the victim).

### C.    Standard for Determining Unexhausted Claims

[T]he Supreme Court has held that if a petitioner "failed to exhaust state remedies and the court to which the petitioner would be required to present his claims in order to meet the exhaustion requirement would now find the claims procedurally barred" the claims are considered exhausted and

procedurally defaulted for purposes of federal habeas relief.  *Coleman v. Thompson,* 501 U.S. 722, 735 n. 1 (1991).

* * *

The exhaustion doctrine requires a state prisoner to fairly present his or her claims to the state courts before a federal court will examine them. Fair presentation of a prisoner's claim to the state courts means that the substance of the claim must be raised there. The prisoner's allegations and supporting evidence must offer the state courts a fair opportunity to apply controlling legal principles to the facts bearing upon his constitutional claim. Therefore, although a habeas petitioner will be allowed to present bits of evidence to a federal court that were not presented to the state court that first considered his claim, evidence that places the claims in a significantly different legal posture must first be presented to the state courts.

*Thomas v. Gibson,* 218 F.3d 1213, 1221 -1222 and n. 6 (10th Cir. 2000)(quoting *Demarest v. Price,* 130 F.3d 922, 932 (10th Cir. 1997)).  A generalized claim of ineffective assistance is not sufficient to exhaust a specific issue.  *Id.*

    D.    <u>Unexhausted Claims</u>

        1.    Not Fairly Presented

Petitioner concedes that the specifics of some claims were not raised, but argues that they were, nevertheless, fairly presented before the state court.  The court finds the following of those claims were neither specifically raised nor fairly presented because they were not presented with specificity sufficient to allow "a fair opportunity to apply controlling legal principles to the facts bearing upon his constitutional claim": I (A)(5)(a)(ineffective assistance of trial counsel, failure to discover Hilfinker as suspect) and (d)(same); I (A)(6)(ineffective assistance of trial counsel for failing to hire mental health expert in connection with attempt to suppress confession); I (A)(14) (ineffective assistance of counsel re: issue of blood atonement and race of Cain for *voir dire* purposes); I

(A)(15)(ineffective assistance of counsel for failure to seek bill of particulars); VIII (A)(6)(ineffective assistance for failure to object to admissibility of abstract of testimony from 1985 trial during 1992 retrial on guilt phase); VIII (A)(9)(b); and VIII (A)(9)(c). While more general issues may have been presented, the specific facts now alleged were not presented and are, therefore, not exhausted.

However, as to Claim XIII (A)(6), it is a closer call. In Petitioner's Second Amended Petition for a Writ of Habeas Corpus filed in state court, he alleged ineffective assistance of trial and appellate counsel in the 1992 retrial of the penalty phase. Addendum C, at 11-15. In the context of these ineffective assistance claims in his state habeas petition, Petitioner alleged that the trial court erroneously passed for cause a juror who subsequently became the jury foreman. *Id.* at 13 ¶ 5. In support of this argument, he specifies the reasons he believes that the juror was biased and prejudiced. In *Carter III*, the Utah Supreme Court reviewed some of Petitioner's ineffective assistance claims on the merits, including the one based on passing juror Nelson for cause. 44 P.3d at 636-39.

In the present Petition, in Claim XIII (A)(6), Petitioner alleges that the trial court erred in not striking several jurors for cause, including juror Nelson, because his answers to some questions were similar to answers given by other jurors stricken for cause. The gist of this claim is that if the trial court had properly removed one or more of three other jurors for cause, the defense would not have had to use peremptory challenges to remove them and would then have had a peremptory challenge remaining to use on juror Nelson.

Thus, the issue previously presented to the state courts for exhaustion, ineffective assistance for failing to raise the issue of the alleged error by the court in not removing the

one specific juror for cause, did not fairly present to the state courts the different issue contained in XIII(A)(6), that the trial court itself erred in not removing one or more jurors, including Nelson, for cause.  The court notes that Respondent concedes that the former issue–ineffective assistance with regard to juror Nelson–was exhausted.  *See* Claim VIII (A)(15) and Reply at 40.  Accordingly, the court finds that Claim XIII(A)(6) is not exhausted.

        2.    <u>Unexhausted Claims</u>

In addition to the claims above, where Petitioner conceded that the claims were not specifically exhausted but argued that the claims were nonetheless fairly presented, the parties dispute whether other claims were properly exhausted.  The court has carefully reviewed the parties' positions on these claims and finds as follows.  The following claims are not exhausted:  Claim I (ineffective assistance of counsel during 1995 trial) in connection with the following: I (A)(3) (failure to obtain fact investigator for defense team); I (A)(3)(unfamiliar with death penalty jurisprudence); I (A)(5)(e) (failure to discover Petitioner's blood or fingerprints had not been located at the scene of the crime); I (A)(5)(i), (j) and (k) (palm prints on door, doorknob, prints on bathroom mirror and Vaseline tube); I (A)(5)(n) (failure to hire forensic expert to review state's evidence); I (A)(8) (evidence of diminished intellectual function and effect on confession); and I (A)(12).  Likewise, the court finds the following claims have not been exhausted: Claim VI (A)(10) (L. Tovar's testimony unreliable);  VII (A)(8) (failure to raise issue on instructions re: reasonable doubt and burden of proof), VIII (A)(5) (failure to investigate or develop evidence re: Petitioner's positive adjustment in prison); VIII (A)(9) (failure to obtain independent mental health expert as part of defense team) and VIII (A)(12).

On Claim I (A)(6) (trial counsel's failure to become familiar with Utah law on knowing and voluntary waiver issues re: confession) the court agrees with Respondent that the reference in *Carter III* to this issue was not exhausted by issues raised in the Utah Supreme Court by the *amicus* brief at pages 33-34 and 36.

The following is an examination of several claims which may superficially appear to have been exhausted.  However, a  thorough review of the entire record establishes they were not exhausted.  Claims I (A)(5)(a) & (b), insofar as they allege failure to discover that the victim's husband was a suspect, were not raised in the Utah Supreme Court by reference in Petitioner's brief *Id*, at 30 § C, by the reference to his allegations in the state habeas petition, (1m), to "the failure to adequately question victim's husband as to marital difficulties and his motive to murder his wife."   Section 1(m) of the habeas petition alleged:

> Due to his failure to investigate, defense counsel was unaware of police interviews with neighbors of the Olesons and those acquainted with the Olesons who would have confirmed Mr. Oleson's motive and opportunity to commit the murder.

*Id*. at 7 ¶ 1(m).

Raising the specific issue that defense counsel failed to discover that the victim's husband had an alleged motive and opportunity to commit the murder is different than the issue of the failure to discover that the husband was considered a suspect as set forth in the present Petition's section 1 (A)(5)(a) or (b), and these claims are, therefore, unexhausted.

Claims I (A)(5)(h) & (i) (ineffective assistance claim based on waiver of cross examination of specific state witness--the forensic criminologist) was not exhausted by the

raising of the general claim that counsel "failed to probe [unspecified] prosecution witnesses as to the lack of forensic evidence. " *Id.* at 31 (referring to general claim in state habeas petition that counsel "never probed the prosecution witnesses as to why no forensic evidence was introduced into evidence, . . ." without specifying the witnesses at issue).  Similarly, the present Petition's Claim I (8)(A) (failure to cross-examine witnesses on issues critical to their own credibility and issues related to [Petitioner's] actual innocence" and waiver of "cross-examination of key witnesses who could have testified to facts favorable to" his defense) was not exhausted by the appeal to the Utah Supreme Court of the general claim from his habeas petition that was quoted in the preceding sentence.

### 3.   Exhausted Claim

The court finds that Claim IX (A)(3) regarding the prosecutor's remark on brain damage is exhausted.

### 4.   Summary of Unexhausted Claims

For the reasons stated above, the following claims, or independent subparts of claims, are unexhausted:  I (A)(3) (failure to obtain fact investigator for defense team); I (A)(3) (counsel's failure to familiarize himself with death penalty jurisprudence); I (A)(5)(a) & (b) (failure to discover that the victim's husband was a suspect); I (A)(5)(a) and (d) (ineffective assistance of trial counsel, failure to discover Hilfinker as suspect); I (A)(5)(e) (failure to discover Petitioner's blood or fingerprints not located at the scene of the crime); I (A)(5)(h) & (i) (ineffective assistance claim based on waiver of cross examination of state's forensic criminologist); I (A)(5)(i), (j) and (k) (failure to investigate or examine

22

witnesses re: palm prints on door, doorknob, prints on bathroom mirror and vaseline tube); I (A)(5)(n) (failure to hire forensic expert to review state's evidence); I (A)(6) (failure to secure witness); I (A)(6) (failure to research Utah law on knowing and voluntary waiver issues for suppression of confession); I (A)(6) (ineffective assistance of trial counsel for failing to hire mental health expert in connection with attempt to suppress confession); I (A)(8) (ineffective assistance for failure to present evidence of diminished intellectual function and effect on confession); I (A)(8) (failure to cross-examine witnesses on issues critical to their own credibility and issues related to [Petitioner's] actual innocence" and waiver of "cross-examination of key witnesses who could have testified to facts favorable to" his defense); I (A)(10); I (A)(11);  I (A)(12); I (A)(13); I (A)(14) (ineffective assistance of counsel re: issues of blood atonement and race of Cain for *voir dire* purposes); I (A)(15) (ineffective assistance of counsel for failure to seek bill of particulars); VI (interpreter's qualifications and manner in which questions posed to L. Tovar); VII (A)(8) (ineffective by failure to raise issue on instructions re: reasonable doubt and burden of proof); VIII (A)(6) (ineffective for failure to object to admissibility of abstract of testimony from 1985 trial during 1992 retrial on guilt phase); VIII (A)(7) (ineffective assistance of counsel during 1992 retrial of penalty phase for failure to read favorable portion of E. Tovar's testimony into record); VIII (A)(5) (ineffective by failure to investigate or develop evidence re: Petitioner's positive adjustment in prison); VIII (A)(8); VIII (A)(9) (ineffective for failure to obtain independent mental health expert as part of defense team); VIII (A)(9)(b);  VIII (A)(9)(c); VIII (A)(11); VIII (A)(12); VIII (A)(18); IX (A)(2); XIII (A)(6); XVI (A)(1)(g);   XVII (A)(5);

XXXVIII (A)(3) (improper argument of prosecutor and inadequate arguments of defense counsel).

## VII.  PETITIONER'S REQUEST FOR SCHEDULING

In Petitioner's Response, he requests that "this court promulgate a schedule for the conducting of discovery, the filing of any motion for expansion of the record and the filing of any motion for an evidentiary hearing."  Response at 19-20 and 47.  Moreover, he seeks such scheduling before he is required to brief the merits of his Petition.  *Id*. at 19.  However, as noted above, it is not possible to address the merits of his mixed Petition unless the entire Petition would thereby be dismissed.  Therefore, no motions will be scheduled at this time.

## VIII.  ORDER

Based upon the foregoing, it is therefore

ORDERED that Respondent's Motion to Dismiss is DENIED IN PART insofar as it was based on the position that the Petition is untimely filed.  It is further

ORDERED that no later than 15 days following entry of this Order, Petitioner shall file a supplemental memorandum clarifying if he will seek (1) dismissal of his unexhausted claims or (2) a stay and abeyance for the purpose of returning to state court to exhaust those claims.  For each unexhausted claim that he does not seek to dismiss, the supplemental memorandum shall address each of the *Rhines* factors.  Any response memorandum must be filed no later than 10 days after service of the supplemental memoranda.  A reply may be filed at Petitioner's discretion within seven days after service of the response memorandum.  It is further

24

ORDERED that Respondent's Motion to Stay Time to file answer is GRANTED.  It is further

ORDERED that Respondent's Motion to Strike November 9, 2004, Order Granting Extension is DENIED as moot.

DATED  July 18, 2005.

BY THE COURT:

_____
TED STEWART
United States District Judge